## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## COLUMBUS DIVISION

EMPLOYERS MUTUAL )
CASUALTY COMPANY, )
                     )
       Plaintiff, )
                     )
v. )      CIVIL ACTION FILE NO.
                     )
TIGER CREEK DEVELOPMENT, )
INC.; DAVID ERICKSON; AND )    _____
CHERRY PEASE, )
                     )
       Defendants. )
                     )

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW, EMPLOYERS MUTUAL CASUALTY COMPANY

("EMC"), Plaintiff in the above-styled action, and files this Complaint for

Declaratory Judgment, showing this honorable Court as follows:

### PARTIES AND JURISDICTION

1.

This is an action for declaratory judgment brought pursuant to Rule 57 of the

Federal Rules of Civil Procedure and 28 U.S.C. § 2201, to declare the rights and

other legal relations surrounding the questions of actual controversy which

presently exist among EMC and Tiger Creek Development, Inc. ("Tiger Creek");

David Erickson; and Cherry Pease.

2.

Upon information and belief, Defendant Tiger Creek is a Georgia corporation existing under the laws of Georgia, with its principal place of business in Columbus, Georgia.  It can be served through its registered agent, Christopher L. Meacham, 5704 Veterans Parkway, Columbus, Muscogee County, Georgia 31904.

3.

Upon information and belief, Defendant David Erickson is an individual and citizen of Muscogee County, Georgia, who may be personally served at 2301 Airport Thruway, Suite E-6, Columbus, Muscogee County, Georgia 31904.

4.

Upon information and belief, Defendant Cherry Pease is an individual and citizen of Muscogee County, Georgia, who may be served at 8401 Blackmon Road, Columbus, Muscogee County, Georgia  31909.

5.

Defendant Tiger Creek and Defendant Erickson seek coverage from EMC under a policy of liability insurance for the allegations made against them in a lawsuit filed against them by Defendant Pease, which is further detailed below.

6.

Defendant Pease is the Plaintiff in the underlying lawsuit detailed below and, therefore, she is a necessary party to this action.

7.

EMC is a corporation organized and existing under the laws of the State of Iowa, and has its principal place of business in Iowa.  EMC submits itself to the jurisdiction and venue of this Court.

8.

This Court has original jurisdiction over this action under the provisions of 28 U.S.C. § 1332, because it is a civil action in which the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is among citizens of different states.

9.

Venue in this action is proper pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

10.

Defendant Pease filed the lawsuit captioned Pease v. Tiger Creek Development, Inc., et al., in the Superior Court of Muscogee County, Georgia, Civil Action File No. SU-2020-CV-2196 (the "underlying lawsuit") on November 5, 2020, naming Tiger Creek and Erickson as Defendants.

11.

A true and correct copy of the underlying lawsuit is attached hereto as Exhibit 1.

12.

Defendant Pease has been included as a named Defendant in this action for declaratory relief because she has a potential financial interest in the outcome of this action.

13.

The underlying Defendants Tiger Creek and Erickson have been served with the underlying lawsuit and filed their answer to the same.

14.

The underlying lawsuit seeks damages and injunctive relief for damages caused by Defendants Tiger Creek's and Erickson's alleged negligence, negligence per se, trespass and nuisance, related to alleged storm water discharges, runoff, and sedimentation onto Defendant Pease's property. Exhibit 1, ¶¶ 11-18, 22-23.

15.

The actions alleged in the underlying lawsuit, which caused the alleged damages, began by at least January 2019.

16.

The claims in the underlying lawsuit relate to the alleged discharge of storm water, as well as excessive storm water flows and sedimentation, from Defendants' development activities onto Defendant Pease's property. Exhibit 1, ¶¶ 13-18, 22-23.

4

17.

On June 16, 2020, before the underlying lawsuit was filed, an attorney for Defendant Pease sent a letter to Defendant Tiger Creek in care of Defendant Erickson, which advised that Defendant Tiger Creek's development activities caused water runoff and "washed clay sediment and mud" onto Defendant Pease's property, which "caused severe staining and damage."  The letter warned that if immediate action was not taken to resolve the problem, then Defendant Pease would file suit.  *See* Exhibit 2.

18.

A true and correct copy of the June 16, 2020 letter is attached hereto as Exhibit 2.

19.

Before receiving this letter, Defendants Tiger Creek and/or Erickson had received multiple complaints about the problems from Defendant Pease.

20.

The claims against Defendants Tiger Creek and Erickson in the underlying suit include: negligence, including negligent clearing of trees and vegetation, which allowed sand and/or topsoil, as well as storm water runoff to wash onto Defendant Pease's property; negligence per se in failing to comply with their storm water management plan, violating the City of Columbus' Code of Ordinances, and

violating Georgia' Erosion and Sedimentation Act;  continuing trespass and nuisance from repeated storm water and surface water discharges onto Defendant Pease's property; and punitive damages, special damages, diminution in value damages, nominal damages, and attorney's fees and expenses against Defendants Tiger Creek and Erickson.

21.

By approximately January 2019, Defendants Tiger Creek and/or Erickson had received notice of Defendant Pease's complaints about repeated water discharges and sedimentation from Defendant Tiger Creek's property, causing damages to Defendant Pease's property.

22.

On April 30, 2020, Defendant Erickson attended a site inspection of Defendant Pease's property, which was also attended by Defendant Pease and her expert, among others.

23.

Defendants Tiger Creek and Erickson first notified EMC of the alleged occurrence and claim against it on June 25, 2020, at least one and a half years after the alleged damages at issue in the underlying lawsuit began, and approximately one and a half years after Defendants Tiger Creek and Erickson received notice of the claim from Defendant Pease.

24.

On July 6, 2020, after receiving notice of the claim and suit for the first time on June 25, 2020, EMC sent a reservation of rights letter to Defendant Tiger Creek. A true and correct copy of the July 6, 2020 letter is attached as Exhibit 3.

25.

On February 2, 2021, EMC sent a reservation of rights letter to Defendant Erickson. A true and correct copy of the February 2, 2021 letter is attached as Exhibit 4.

26.

As indicated in its Reservation of Rights letters, EMC is providing Defendants Tiger Creek and Erickson with a defense to the underlying lawsuit, subject to a complete reservation of rights.

**EMC'S POLICY**

27.

EMC issued Policy number 5D4 23 72-21 to named insured Tiger Creek Development, Inc., with effective dates from January 18, 2020 through January 18, 2021.  A true and correct copy is attached as Exhibit 5.  The policy provided general liability coverage with general aggregate limits of $2 million, and an each occurrence limit of $1 million.  It is also provided personal and advertising injury coverage with a limit of $1 million.

28.

Under the commercial general liability coverage form, Coverage A
provided as follows:

**COVERAGE A.    BODILY INJURY AND PROPERTY
DAMAGE LIABILITY**

**1.    Insuring Agreement**

　　　**a.**　　We will pay those sums that the insured becomes
legally obligated to pay as damages because of "bodily
injury" or "property damage" [1] to which this insurance
applies. We will have the right and duty to defend the
insured against any "suit" seeking those damages.
However, we will have no duty to defend the insured
against any "suit" seeking damages for "bodily injury"
or "property damage" to which this insurance does not
apply. We may, at our discretion, investigate any
"occurrence"[2] and settle any claim or "suit" that may
result. But:

　　　　　(1)　　The amount we will pay for damages is limited as
described in Section III-Limits Of Insurance; and

　　　　　(2)　　Our right and duty to defend ends when we have
used up the applicable limit of insurance in the
payment of judgments or settlements under
Coverage A or B or medical expenses under
Coverage C.

---

[1] The policy defined "property damage" as follows:

**17.** "property damage" means:

　　　**a.**　　Physical injury to tangible property, including all resulting loss of use of that property. All such
loss of use shall be deemed to occur at the time of the physical injury that caused it; or

　　　**b.**　　Loss of use of tangible property that is not physically injured. All such loss of use shall be
deemed to occur at the time of the "occurrence" that caused it.

　　　For the purposes of this insurance, electronic data is not tangible property.

[2] The policy defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the
same general harmful conditions."

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

29.

In addition, Coverage A contained the following requirements for coverage:

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

. . .

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

> (1)     Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;
>
> (2)     Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or
>
> (3)     Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

30.

Coverage A also contained the following exclusions:

This insurance does not apply to:

**a.      Expected Or Intended Injury**

> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.
>
> . . .

**f.      Pollution**

> (1)     "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants[3]";
>
> > (a)     At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.  . . .
> >
> > . . .
> >
> > (d)     At or from any premises, site or location on which any insured or any contractors or

---

[3] The policy defined "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned, or reclaimed."

subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. . . .

(e)     At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in way respond to, or assess the effects of, "pollutants".

(2)     Any loss, cost or expense arising out of any:

(a)     Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b)     Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

31.

In addition, the policy provided coverage for personal and advertising injury

liability under Coverage Part B, as follows:

**COVERAGE B – PERSONAL AND ADVERTISING INJURY
LIABILITY**

**1.      Insuring Agreement**

  **a.**      We will pay those sums that the insured becomes legally
obligated to pay as damages because of "personal and
advertising injury" to which this insurance applies.  We
will have the right and duty to defend the insured against
any "suit" seeking those damages.  However, we will
have no duty to defend the insured against any "suit"
seeking damages for "personal and advertising injury" to
which this insurance does not apply.  We may, at our
discretion, investigate any offense and settle any claim or
"suit" that may result. …

  . . .

  **b.**      This insurance applies to "personal and advertising
injury" caused by an offense arising out of your business
but only if the offense was committed in the "coverage
territory" during the policy period.

32.

Coverage B also contained the following exclusions:

This insurance does not apply to:

  **a.      Knowing Violation Of Rights Of Another**

  "Personal and advertising injury" caused by or at the
direction of the insured with the knowledge that the act
would violate the rights of another and would inflict
"personal and advertising injury".

. . .

**m.   Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n.   Pollution Related**

Any loss, cost or expense arising out of any:

(1)   Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2)   Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

33.

The policy contained preconditions to coverage with which an insured was required to comply.  For example, the policy stated:

**2.   Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.**   You must see to it that we are notified as soon as practicable of any "occurrence" or an offense which may result in a claim.  To the extent possible, notice should include:

(1)   How, when and where the "occurrence" or offense took place;

13

(2)    The names and addresses of any injured persons and witnesses; and

(3)    The nature and location of any injury or damage arising of the "occurrence" or offense.

**b.**    If any claim is made or "suit" is brought against any insured, you must:

(1)    Immediately record the specifics of any claim or "suit" and the date received; and

(2)    Notify us as soon as practicable.

You must see to it that we receive written notice of any claim or "suit" as soon as practicable.

**c.**    You and any other involved insured must:

(1)    Immediately send us copies of any correspondence, demands, notices, summonses, or papers in connection with any claim or "suit"; . . .

**d.**    No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

34.

In addition, the policy contained the following endorsement, which applied to Coverage A and provided as follows:

Exclusion **l**. of **Section I – Coverage A – Bodily Injury and Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**l.  Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products–completed operations hazard".

35.

The policy also contained a Continuous Or Progressive Injury Or Damage

Exclusion endorsement, which stated:

**A.  Section I – Coverages, Subparagraph 2. Exclusions,** of **Coverage A – Bodily Injury and Property Damage Liability** is amended to add the following:

**Exclusion for "Bodily Injury" or "Property Damage" Which Commences Prior to Inception of Policy**

This insurance does not apply to any "bodily injury" or "property damage" which was in progress as of the inception date of this policy or which commenced, or which is alleged to have occurred, prior to the inception or effective date of this policy, whether such "bodily injury" or "property damage" is known, unknown or should have been known by any "insured." We have no duty to defend any "suit" or claim alleging such "bodily injury" or "property damage."

This exclusion applies regardless of whether any "bodily injury" or "property damage" which commenced prior to the inception or effective date of this policy or which is, or is alleged to be occurring as of the inception of this policy, continues or progressively deteriorates during or after this policy.

**B.**  For the purposes of this endorsement only, the following **Definitions** have been added or modified as indicated below:
. . .

15

**2.  Section V – Definitions, Subparagraph 13.** is deleted and replaced by the following:

13.     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.  However, this definition does not include any occurrence which commenced prior to the effective date of this policy.

**3.  Section V – Definitions**, is amended by adding the following:

"Insured" means any person or organization qualifying as an insured under **Section II – Who Is An Insured** in the Coverage Form along with any additional named insureds, indemnitees and/or additional insureds whether by endorsement, under an "insured contract" or otherwise and all other parties seeking insured status.

<u>**FIRST CLAIM FOR RELIEF**</u>

36.

EMC reiterates paragraphs 1 through 35 as if fully set forth herein.

37.

To the extent that the insurance contract issued by EMC does not provide coverage for the underlying lawsuit against Defendants Tiger Creek and Erickson, EMC has no duty to defend or indemnify said Defendants for the claims asserted against them in that lawsuit.

38.

Specifically, policy number 5D4 23 72-21, under Coverages A and B, contains exclusions of coverage for "'property damage' arising out of the actual,

alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants'." <u>See</u> ¶ ¶ 30, 32 above.

39.

To the extent the damages at issue in the underlying lawsuit arise out of pollution or pollutants, the exclusions referenced in paragraphs 30 and 32 of this Complaint apply.

40.

No coverage is owed for any liability against Defendants Tiger Creek and Erickson  that comes within the pollution exclusions contained in the policy, including, but not limited to, any punitive damages that may be sought against said Defendants, which, if awarded, would necessarily be based on conduct that falls within this exclusion.

41.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that EMC may have its rights and duties under the applicable contract of insurance determined and avoid the possible accrual of damages.

42.

Accordingly, EMC seeks a declaration that no indemnification or duty to defend is owed by EMC to Defendants Tiger Creek and Erickson for any liability

that may come within  the pollution exclusions recited in paragraphs 29 and 31 of this Complaint, including, but not limited to, any punitive damages that may be sought against said Defendants in the underlying lawsuit.

## SECOND CLAIM FOR RELIEF

43.

EMC reiterates paragraphs 1 through 42 as fully set forth herein.

44.

To the extent that the contract of insurance issued by EMC does not provide coverage for the underlying lawsuit against Defendants Tiger Creek and Erickson, EMC has no duty to defend or indemnify Defendants Tiger Creek and Erickson for the claims asserted against them in that lawsuit.

45.

Specifically, the policy at issue contains exclusion from coverage for liability for property damage expected or intended by the insured.  *See* ¶ 30.

46.

To the extent the damages at issue in the underlying lawsuit arise out of property damage expected or intended by the insured, the exclusion referenced in paragraph 30 of this Complaint applies.

47.

No coverage is owed for any liability against Defendants Tiger Creek and

Erickson that comes within the expected or intended exclusion set forth in paragraph 30, including, but not limited to, any punitive damages that may be sought against them, which, if awarded, would necessarily be based on conduct that falls within this exclusion.

48.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that EMC may have its rights and duties under the applicable contract of insurance determined and avoid the possible accrual of damages.

49.

Accordingly, EMC seeks a declaration that no indemnification or duty to defend is owed by EMC to Defendants Tiger Creek and Erickson for any liability that may come within the expected or intended exclusion recited in paragraph 30 of this Complaint, including, but not limited to, any punitive damages that may be sought against said Defendants in the underlying lawsuit.

**THIRD CLAIM FOR RELIEF**

50.

EMC reiterates paragraphs 1 through 49 as if fully set forth herein.

51.

The policy at issue required an insured to give timely notice of a claim.

19

52.

Policy number 5D4 23 72-21provided as follows:

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1.    Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    **a.**    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        **(1)**    How, when and where the "occurrence" or offense took place;

        **(2)**    The names and addresses of any injured persons and witnesses; and

        **(3)**    The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **b.**    If any claim is made or "suit" is brought against any insured, you must:

        (1)    Immediately record the specifics of any claim or "suit" and the date received; and

        (2)    Notify us as soon as practicable.

        You must see to it that we receive written notice of any claim or "suit" as soon as practicable.

    **c**.    You and any other involved insured must:

        (1)    Immediately send us copies of any correspondence, demands, notices, summonses or papers in connection with any claim or "suit";

        (2)    Authorize us to obtain records and other information;

        (3)    Cooperate with us in the investigation or

settlement of any claim or defense of any "suit"; and

(4)   Assist us, upon our request in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.**   No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

53.

The actions and violations alleged in the underlying lawsuit, which caused the alleged damages, began by at least January 2019, when Defendant Pease and/or her representatives first noticed the alleged damages and complained to Defendant Erickson  and/or Defendant Tiger Creek about them.

54.

On April 30, 2020, Defendant Erickson attended a site inspection of Defendant Pease's property, which was also attended by Defendant Pease and her expert, among others.

55.

On June 16, 2020, before the underlying lawsuit was filed, an attorney for Defendant Pease sent a letter to Defendant Tiger Creek in care of Defendant Erickson, which advised that Defendant Tiger Creek's development activities caused water runoff, and "washed clay sediment and mud" onto Defendant Pease's

property, which "caused severe staining and damage."  The letter warned that if immediate action was not taken to resolve the problem, then Defendant Pease would file suit.  *See* Exhibit 2.

56.

Defendants Tiger Creek and Erickson first notified EMC of the alleged occurrence and claim against them on June 25, 2020, at least one and a half years after the alleged damages at issue in the underlying lawsuit began, and at least one and a half years after said Defendants Tiger Creek and Erickson were put on notice of Defendant Pease's claims.

57.

To the extent that Defendants Tiger Creek and Erickson failed to provide timely notice of the claim pursuant to the terms and conditions of the applicable policy, no coverage is afforded under the policy for liability or damages that may be sought against said Defendants in the underlying lawsuit.

58.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by the Court, so that EMC may have its rights and duties under the applicable contract of insurance determined and avoid the possible accrual of damages.

59.

Accordingly, EMC seeks a declaration from this Court that no indemnification or duty to defend is owed to Defendants Tiger Creek and Erickson for any liability or damages that may be incurred by said Defendants in the underlying lawsuit because they did not  provide timely notice under the terms and conditions of the applicable policy of insurance.

## FOURTH CLAIM FOR RELIEF

60.

EMC reiterates paragraphs 1 through 59 as if fully set forth herein.

61.

The policy defined "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

62.

Therefore, to the extent that the alleged damages were not caused by an "occurrence" under the policy, no coverage is afforded under said policy for liability or damages that may be sought against Defendants Tiger Creek and Erickson in the underlying lawsuit.

63.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by the Court, so that EMC may have its rights and

duties under the applicable contract of insurance determined and avoid the possible accrual of damages.

64.

Accordingly, EMC seeks a declaration from this Court that no indemnification or duty to defend is owed to Defendants Tiger Creek and Erickson for any liability or damages that may be incurred by said Defendants in the underlying lawsuit to the extent they were not caused by an "occurrence" under the policy in question.

**<u>FIFTH CLAIM FOR RELIEF</u>**

65.

EMC reiterates paragraphs 1 through 64 as if fully set forth herein.

66.

To the extent that the contract of insurance issued by EMC does not provide coverage for the underlying lawsuit against Defendants Tiger Creek and Erickson, EMC has no duty to defend or indemnify said Defendants for the claims asserted against them in that lawsuit.

67.

The policy also contained a Continuous Or Progressive Injury Or Damage Exclusion endorsement, which stated:

24

A.   **Section I – Coverages, Subparagraph 2. Exclusions, of Coverage A – Bodily Injury and Property Damage Liability** is amended to add the following:

**Exclusion for "Bodily Injury" or "Property Damage" Which Commences Prior to Inception of Policy**

This insurance does not apply to any "bodily injury" or "property damage" which was in progress as of the inception date of this policy or which commenced, or which is alleged to have occurred, prior to the inception or effective date of this policy, whether such "bodily injury" or "property damage" is known, unknown or should have been known by any "insured." We have no duty to defend any "suit" or claim alleging such "bodily injury" or "property damage."

This exclusion applies regardless of whether any "bodily injury" or "property damage" which commenced prior to the inception or effective date of this policy or which is, or is alleged to be occurring as of the inception of this policy, continues or progressively deteriorates during or after this policy.

B.   For the purposes of this endorsement only, the following **Definitions** have been added or modified as indicated below:

. . .

2.  **Section V – Definitions, Subparagraph 13.** is deleted and replaced by the following:

13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.  However, this definition does not include any occurrence which commenced prior to the effective date of this policy.

3.  **Section V – Definitions**, is amended by adding the following:

"Insured" means any person or organization qualifying as an insured under **Section II – Who Is An Insured** in the Coverage Form along with any additional named insureds, indemnitees and/or additional insureds whether by endorsement, under an "insured contract" or otherwise and all other parties seeking insured status.

68.

By January 2019, Defendants Tiger Creek and/or Erickson had received notice of Defendant Pease's complaints about repeated water discharges and sedimentation from Defendant Tiger Creek's property, causing damages to Defendant Pease's property.

69.

Policy number 5D4 23 72-21, issued to Defendant Tiger Creek as named insured, had effective dates of January 18, 2020 through January 18, 2021.

70.

To the extent that the alleged "property damage" was in progress, commenced, or is  alleged to have occurred, prior to the policy's initial inception date, coverage may be excluded under the policy, including, but not limited to, coverage for any punitive damages that may be sought against Defendants.

71.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that EMC may have its rights

and duties under the applicable contract of insurance determined and avoid the

possible accrual of damages.

72.

Accordingly, EMC seeks a declaration that no indemnification or duty to

defend is owed by EMC to Defendants Tiger Creek and Erickson for any liability

to the extent that the alleged "property damage" commenced, was in progress, or is

alleged to have occurred prior to the policy's inception date.

**<u>SIXTH CLAIM FOR RELIEF</u>**

73.

EMC reiterates paragraphs 1 through 72 as if fully set forth herein.

74.

The policy defines "personal and advertising injury" under Coverage B to
mean:

> … injury, including consequential "bodily injury", arising out of one
> or more of the following offenses:

> a.   False arrest, detention or imprisonment;
> b.   Malicious prosecution;
> c.   The wrongful eviction from, wrongful entry into, or invasion of
>       the right of private occupancy of a room, dwelling, or premises
>       that a person occupies, committed by or on behalf of its owner,
>       landlord, or lessor;
> d.   Oral or written publication, in any manner, of material that
>       slanders or libels a person or organization or disparages a
>       person's or organization's goods, products, or services;
> e.   Oral or written publication, in any manner, of material that
>       violates a person's right to privacy;
> f.   The use of another's advertising idea in your advertisement; or,

27

g.    Infringing upon another copyright, trade dress, or slogan in
your "advertisement".

75.

No coverage is owed to Defendants Tiger Creek and Erickson under the

policy at issue for the damages asserted in the underlying lawsuit to the extent that

the damages at issue do not qualify as "personal and advertising injury'" as defined

under the policy.

76.

Therefore, to the extent that the alleged damages do not qualify as "personal

and advertising injury" under the policy, no coverage is afforded under said policy

for liability or damages that may be sought against Defendants Tiger Creek and

Erickson in the underlying lawsuit.

77.

A controversy of a justiciable nature presently exists among the parties,

which demands a declaration by the Court, so that EMC may have its rights and

duties under the applicable contract of insurance determined and avoid the possible

accrual of damages.

78.

Accordingly, EMC seeks a declaration from this Court that no

indemnification or duty to defend is owed to Defendants Tiger Creek and Erickson

for any liability or damages that may be incurred by said Defendants in the

underlying lawsuit to the extent they were not caused by "personal and advertising injury" under the policy in question.

## SEVENTH CLAIM FOR RELIEF

79.

EMC reiterates paragraphs 1 through 78 as if fully set forth herein.

80.

The policy defined "property damage" to mean:

a.   Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.   Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that cause it.

81.

Therefore, to the extent that the alleged damages do not qualify as "property damage" under the policy, including but not limited to claims for injunctive relief, no coverage is afforded under said policy for liability or damages that may be sought against Defendants Tiger Creek and Erickson in the underlying lawsuit.

82.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by the Court, so that EMC may have its rights and duties under the applicable contract of insurance determined and avoid the possible accrual of damages.

83.

Accordingly, EMC seeks a declaration from this Court that no indemnification or duty to defend is owed to Defendants Tiger Creek and Erickson for any liability or damages that may be incurred by said Defendants in the underlying lawsuit to the extent they do not qualify as "property damage" under the policy in question.

## EIGHTH CLAIM FOR RELIEF

84.

EMC reiterates paragraphs 1 through 83 as fully set forth herein.

85.

To the extent that the contract of insurance issued by EMC does not provide coverage for the underlying lawsuit against Defendants Tiger Creek and Erickson, EMC has no duty to defend or indemnify Defendants Tiger Creek and Erickson for the claims asserted against them in that lawsuit.

86.

Specifically, the policy at issue contains an exclusion from coverage for liability for " 'personal and advertising injury' caused by or at the direction of the insured with knowledge that the act would violate the rights of another …". *See* ¶ 32.

87.

To the extent that there was "'personal and advertising injury' caused by or at the direction of the insured with knowledge that the act would violate the rights of another...", the exclusion referenced in paragraph 32 of this Complaint applies.

88.

No coverage is owed for any liability against Defendants Tiger Creek and Erickson that comes within the knowing violation exclusion set forth in paragraph 32, including, but not limited to, any punitive damages that may be sought against them, which, if awarded, would necessarily be based on conduct that falls within this exclusion.

89.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that EMC may have its rights and duties under the applicable contract of insurance determined and avoid the possible accrual of damages.

90.

Accordingly, EMC seeks a declaration that no indemnification or duty to defend is owed by EMC to Defendants Tiger Creek and Erickson for any liability that may come within the knowing violation exclusion recited in paragraph 32 of this Complaint, including, but not limited to, any punitive damages that may be

sought against said Defendants in the underlying lawsuit.

## NINTH CLAIM FOR RELIEF

91.

EMC reiterates paragraphs 1 through 90 as fully set forth herein.

92.

To the extent that the contract of insurance issued by EMC does not provide coverage for the underlying lawsuit against Defendants Tiger Creek and Erickson, EMC has no duty to defend or indemnify Defendants Tiger Creek and Erickson for the claims asserted against them in that lawsuit.

93.

Specifically, the policy at issue contains exclusion from coverage for liability for "'property damage' to 'your work'".  *See* ¶ 34.

94.

To the extent the damages at issue in the underlying lawsuit arise out of "'property damage' to 'your work'", the exclusion referenced in paragraph 34 of this Complaint applies.

95.

No coverage is owed for any liability against Defendants Tiger Creek and Erickson that comes within the damage to your work exclusion set forth in paragraph 34, including, but not limited to, any punitive damages that may be

sought against them, which, if awarded, would necessarily be based on conduct that falls within this exclusion.

96.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that EMC may have its rights and duties under the applicable contract of insurance determined and avoid the possible accrual of damages.

97.

Accordingly, EMC seeks a declaration that no indemnification or duty to defend is owed by EMC to Defendants Tiger Creek and Erickson for any liability that may come within the damage to your work exclusion recited in paragraph 34 of this Complaint, including, but not limited to, any punitive damages that may be sought against said Defendants in the underlying lawsuit.

98.

**WHEREFORE,** EMC prays:

a.    That this Court enter a Declaratory Judgment declaring that EMC has no duty to defend or indemnify Defendants under the aforementioned contract of insurance for any claims made against them in the underlying lawsuit;

b.    That EMC be awarded its costs in this action;

c.      That this Court award such other and further relief as this honorable

Court may deem proper under the circumstances; and

d.      That process and summons be issued to all Defendants herein and that

service on the Defendants be had as required by law.

Respectfully submitted this 27th day of April, 2021.

Respectfully submitted,

SWIFT, CURRIE, McGHEE & HIERS

*/s/ Michael H. Schroder*
Michael H. Schroder
Georgia Bar No. 630075

*/s/ Melissa K. Kahren*
Melissa K. Kahren
Georgia Bar No. 527406
Attorneys for Plaintiff
1355 Peachtree Street, N.E.; suite 300
Atlanta, Georgia 30309
(404) 874-8800

4837-4599-3438, v. 1