IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

EMPLOYERS MUTUAL CASUALTY            *
COMPANY,
                                     *
     Plaintiff,
                                     *
vs.
                                     *          CASE NO. 4:21-CV-65 (CDL)
TIGER CREEK DEVELOPMENT, INC.,
DAVID ERICKSON, and CHERRY           *
PEASE,
                                     *
     Defendants.
                                     *

O R D E R

This declaratory judgment action presents the question whether Tiger Creek Development, Inc. and David Erickson's liability insurance policy covers a claim arising from their construction project that allegedly caused sediment deposits to pollute Cherry Pease's pond.  In the underlying state court lawsuit, Pease alleges that Tiger Creek and Erickson's work on adjacent property caused runoff that increased sediment deposits in her pond and damaged her property.  Employers Mutual Insurance Company seeks summary judgment on its declaratory judgment claim that it has no duty to defend or indemnify Tiger Creek or Erickson for the claims asserted by Pease in the underlying state court action.  For the following reasons, that motion for summary judgment (ECF No. 20) is granted.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether a genuine dispute of material fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is material if it is relevant or necessary to the outcome of the action.  *Id.* at 248.  A factual dispute is genuine if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

FACTUAL BACKGROUND

Tiger Creek began developing property adjacent to Pease's property in 2018.  Tiger Creek's work required it to remove trees and vegetation from its property.  After Tiger Creek began development, Pease noticed an increase in dirt, clay, and excess water flowing into the creek and pond on her property.  Pease Dep. 44:5-19, ECF No. 20-2. Pease also noticed discoloration in her pond, sand deposits at the mouth of her pond and along her creek's banks, and erosion.  *Id.* at 67:2-17.  Pease believed that the problems with her creek and pond stemmed from runoff caused by Tiger Creek's development activities on the neighboring property.

2

Specifically, Pease believed Tiger Creek's clearing of trees and vegetation allowed sediment to wash downhill onto her property.

In December 2018, Pease notified Tiger Creek and Tiger Creek's owner, Erickson, about her concerns.  Pl.'s Mot. for Summ. J. Ex. C, Erickson's Resp. to Pl.'s Req. for Admis. ¶ 1, ECF No. 20-3. Pease met with a Tiger Creek representative in 2019 and 2020 to discuss her concerns.  *Id.* ¶¶ 7, 9.  Erickson attended the 2020 meeting and offered to remove the sand from Pease's pond but Pease did not accept his offer.  *Id.* ¶¶ 3, 9; Pl.'s Mot. for Summ. J. Ex. G, Tiger Creek's Resp. to Pl.'s Interrogs. ¶ 6, ECF No. 20-7. On June 16, 2020, Pease's attorney sent Tiger Creek and Erickson a letter demanding that they cease the activities causing the alleged runoff or Pease would file suit.  Pl.'s Mot. for Summ. J. Ex. D, Tiger Creek's Resp. to Pl.'s Requests for Admis. ¶¶ 1-2, ECF No. 20-4.  Tiger Creek and Erickson notified their insurer of Pease's claim on June 25, 2020, and Employers Mutual sent Tiger Creek a reservation of rights letter.  Pease filed the underlying action in the Superior Court of Muscogee County, Georgia on November 5, 2020.

Employers Mutual's insurance policy provides coverage in the event of property damage caused by a covered occurrence.  The policy required the insureds to notify Employers Mutual "as soon as practicable of an 'occurrence' or an offense which may result in a claim."  Compl. Ex. 5, Com. Gen. Liab. Coverage Form § IV.2.a,

ECF No. 1-5 at 20.  Under the policy, an occurrence is defined as
"an accident, including continuous or repeated exposure to
substantially the same general harmful conditions."  *Id.*, Com.
Gen. Liab. Coverage Endorsement § B.2, ECF No. 1-5 at 41.  The
policy also states that the insurance does not apply to
"pollution," which is defined as property damage arising from the
"actual, alleged or threatened" discharge of pollutants.  *Id.*,
Com. Gen. Liab. Coverage Form § I.a.2.f, ECF No. 1-5 at 12.
"Pollutants" are defined as "any solid, liquid, gaseous or thermal
irritant or contaminant, including smoke, vapor, soot, fumes,
acids, alkalis, chemicals and waste.  Waste includes materials to
be recycled, reconditioned, or reclaimed."  *Id.* at § V.15, ECF No.
1-5 at 24.

## DISCUSSION

Employers Mutual maintains that no coverage exists here under
its policy for three independent reasons:  1) there was no covered
occurrence, 2) even if there was a covered occurrence, the
pollution exclusion excludes coverage, and 3) Erickson and Tiger
Creek provided late notice of Pease's claim.  The Court addresses
each contention in turn.

## I.   Was There an Occurrence?

Employers Mutual argues there was no occurrence because Tiger
Creek's alleged contamination of Pease's pond was not an accident.
Under the policy, an "occurrence" is defined as an "accident."

The policy does not define "accident," but Georgia law provides that an "accident" in the insurance context is "an unexpected happening rather than one occurring through intention or design." *Am. Empire Surplus Lines Ins. Co. v. Hathaway Dev. Co., Inc.*, 707 S.E.2d 369, 371 (Ga. 2011) (quoting *City of Atlanta v. St. Paul Fire & Marine Ins. Co.*, 498 S.E.2d 782, 784 (Ga. Ct. App. 1998)). Employers Mutual argues that, although Tiger Creek may not have intended for runoff to contaminate Pease's pond, Tiger Creek did intend to clear the neighboring property's hillside of vegetation.

The parties cite conflicting, non-binding district court decisions in support of their respective arguments. Employers Mutual relies upon decisions from the Northern District of Georgia holding that accidental runoff caused by intentional development work is not an occurrence under applicable insurance policies. For example, in *Associated Indemnity Corp. v. Hughes*, No. 4:18-CV-00201-HLM, 2019 WL 2713056, at *4 (N.D. Ga. Apr. 25, 2019), the district court found that, "under Georgia law, the policy term 'occurrence' does not extend to injuries flowing from intentional acts – even if the injuries themselves were accidental." Another district court case, *Owners Insurance Co. v. James*, 295 F. Supp. 2d 1354, 1364 (N.D. Ga. 2003), concluded that policies with language similar to that at issue here "have been construed to cover only injury *resulting from accidental acts* and not *injury accidentally caused by intentional acts*." For example, in one

Georgia case cited by the *James* court, *Allstate Insurance Co. v. Grayes*, the court found no accident and thus no occurrence under the applicable insurance policy when an individual intentionally shot at two individuals.  454 S.E.2d 616, 618 (Ga. Ct. App. 1995).

Defendants, however, cite to other non-binding district court authority supporting the proposition that an "occurrence" includes the accidental effects of intentional actions.  In *Essex Insurance Co. v. H & H Land Development Corp.*, 525 F. Supp. 2d 1344 (M.D. Ga. 2007), one Middle District of Georgia judge expressly rejected the Northern District cases and found that property damage caused by surface water run-off was an occurrence under the applicable policy.  The court reasoned that, if the logic of the Northern District cases were applied, "the 'occurrence' based policy would essentially provide coverage only from random events that involve no element of intent or conscious action" because "[a]lmost every conceivable accident for which an insured could be held liable involves some intentional action at some point in the chain of causation."  *Id.* at 1350-51.

The Court finds that an occurrence, as defined by the insurance policy, can include the unintended physical damage caused by intentional development activity.  Although cited by neither party, the Georgia Supreme Court's decision in *American Empire Surplus Lines Insurance Co. v. Hathaway Development Co.*, 707 S.E.2d 369 (Ga. 2011) is instructive.  In *Hathaway*, the court

6

found that a subcontractor's negligent installation of pipes, which resulted in damage to neighboring property, was an "accident" and thus an "occurrence" under the applicable insurance policy. *Id.* at 370. That insurance policy's definition of occurrence is identical to the one contained in the disputed policy here—"an accident, including continuous or repeated exposure to substantially the same, general harmful conditions." *Id.* The Georgia Supreme Court rejected the argument that the subcontractor's acts could not be occurrences because they were performed intentionally, reasoning that "a deliberate act, performed negligently, is an accident if the effect is not the intended or expected result; that is, the result would have been different had the deliberate act been performed correctly."[1] *Id.* at 372 (quoting *Lamar Homes v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 16 (Tex. 2007)).

Given the Georgia Supreme Court's reasoning in *Hathaway* and the district court's persuasive reasoning in *Essex*, the Court concludes that the runoff caused by Tiger Creek's development activities was an "occurrence" under the policy. While Tiger Creek intentionally cleared the neighboring hillside of vegetation,

---

[1] Other district courts interpreting *Hathaway* cautioned that *Hathaway* is limited to faulty workmanship cases. *See, e.g., Spivey v. Am. Cas. Co. of Reading, Pa.*, 128 F. Supp. 3d 1281, 1285 (S.D. Ga. 2015). While *Hathaway* did not involve sediment runoff caused by a development company's clearing of vegetation, *Hathaway* is sufficiently analogous for its reasoning to be applicable to the current dispute.

there is no evidence that Tiger Creek intended to cause runoff onto Pease's property.  Thus, the sediment runoff constitutes an "occurrence" under the policy.

## II.   Does the Pollution Exclusion Apply?

Employers Mutual argues that, even if the runoff is an occurrence, the policy's pollution exclusion excludes coverage. The policy excludes coverage for any actual or threatened discharged of pollutants, including "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."  Com. Gen. Liab. Coverage Form § V.15, ECF No. 1-5 at 24.  No one disputes that the sediment runoff would be "pollution" under this definition. Rather, Defendants urge the Court to find the pollution exclusion void because it is against Georgia public policy.

Under Georgia law, "a court must not interpret a policy to allow an insurer to provide largely illusory coverage."  *St. Paul Mercury Ins. Co. v. F.D.I.C.*, 774 F.3d 702, 709 (11th Cir. 2014). And Defendants maintain that if the pollution exclusion applies here, coverage under Employers Mutual's policy is merely illusory. This public policy against illusory coverage "disfavors insurance provisions that permit the insurer, at the expense of the insured, to avoid the risk for which the insurer has been paid and for which the insured reasonably expects it is covered.'"  *Id.* (quoting *Barrett v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 696 S.E.2d

326, 330 (Ga. Ct. App. 2010)).  For example, in *Barrett v. National Union Fire Insurance Co. of Pittsburgh*, the Georgia court found that a pollution exclusion for damages caused by natural gas exposure would violate public policy when the policy was issued to a company whose main product was natural gas.  696 S.E.2d at 330.

Here, the exclusion does not render the insurance coverage under the policy illusory.  All policy exclusions restrict coverage.  That is their purpose.  But limiting the circumstances for which coverage is provided does not make the coverage illusory. Employers Mutual's policy certainly covers other occurrences that could arise from its insureds' land development activities other than depositing sediment runoff into a neighboring pond.  Further, the insureds here could not have reasonably expected that their policy would have covered sediment runoff when the policy contains a clear exclusion to the contrary.  Thus, Employers Mutual is entitled to a declaratory judgment that the claims asserted by Pease in the underlying action against Tiger Creek and Erickson are excluded from coverage under the policy.[2]

CONCLUSION

For the foregoing reasons, Employers Mutual's motion for summary judgment (ECF No. 20) is granted, and a declaratory judgment shall be issued in favor of Employers Mutual that it has

---

[2] Because the Court finds that the pollution exclusion applies, the Court does not need to address whether late notice would also result in no coverage.

no duty to provide coverage for the claims asserted in the underlying state court action involving the Defendants.

IT IS SO ORDERED, this 25th day of May, 2022.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA